**FEDERAL DEPOSIT INSURANCE CORPORATION, in Its Corporate Capacity and as Receiver of Decatur County National Bank, Plaintiff,**

**v.**

**J.C. NEMECEK, and Shirley J. Allsbrooks, Defendants.**

**No. 86–1464–K.**

United States District Court, D. Kansas.

Aug. 21, 1986.

Douglas A. Fletcher, Wichita, Kan., for plaintiff.

Terry L. Rogers, Charles L. Frickey, Oberlin, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case is before the court on defendants' motion to enforce a settlement agreement. This motion arises out of a suit brought by the Decatur County National Bank (Bank) against the defendants in state court to obtain judgment on a promissory note on which the defendants were in default. The note was secured by certain land in Decatur County, Kansas. In November of 1984, the Bank and the defendants, through their respective lawyers, agreed to a settlement whereby the Bank would accept quitclaim deeds for the mortgaged property in lieu of foreclosing and seeking a deficiency. The quitclaim deeds were thereafter delivered to the Bank's lawyer by the defendants. On November 21, 1985, the Bank was declared insolvent by the Comptroller of Currency. The Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. The FDIC was substituted as plaintiff in the Bank's suit against the defendants on May 2, 1986. On May 30, 1986, the FDIC petitioned for removal of the case to this court pursuant to 12 U.S.C. § 1819(4). Prior to the FDIC's removal of the action, the defendants filed the motion which is now pending. The FDIC replied, arguing the motion should be denied as the FDIC is not bound by any oral agreements which would tend to diminish its interest in any assets acquired by it from the Bank, pursuant to 12 U.S.C. § 1823(e). For the reasons set forth below, the court will grant defendants' motion to enforce the settlement agreement, and, there remaining nothing for trial, will dismiss this case.

The FDIC insures bank deposits. As an insuror, one of its primary duties is to pay the depositors of a failed bank. Pursuant to 12 U.S.C. § 1823(e), the FDIC is empowered to purchase the assets of failed banks and to collect on them in order to minimize the loss to the insurance fund. *Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11th Cir.), *cert. denied* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The FDIC's attempts to collect on such assets are often met by defenses the obligor on the note had against the failed bank. It has long been recognized that federal policy requires the protection of the FDIC against "secret agreements" between the bank and the obligor which tend to nullify or reduce the apparent value of a purchased asset. *See D'Oench, Duhme & Co., Inc. v. F.D. I.C.*, 315 U.S. 447, 457, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942) (maker alleged that at time note was given an oral agreement was made with the bank that the bank would not enforce it; the Court found, "A federal public policy to protect [the FDIC], and the public funds which it administers, against

misrepresentations as to the securities or other assets in the portfolios of the banks which the [FDIC] insured or to which it makes loans.")

In 1950, Congress codified this policy rule in 12 U.S.C. § 1823(e) as follows:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The statute makes ineffective any "agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in *any asset acquired by it ...*" (emphasis added), and which is not in writing. Because of this protection, the FDIC can rely on the records of the bank in purchasing assets.

However, by its terms, in order for this section to apply, the FDIC must first have *acquired* the asset from the failed bank. This section has no application where "the parties contend that no asset exists or an asset is invalid and that such invalidity is caused by acts independent of any understanding or side agreement." *F.D.I.C. v. Merchants Nat. Bank of Mobile,* 725 F.2d 634, 639 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). *See also Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744 (3d Cir. 1985); *Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir.1981); *Riverside Park Realty Co. v. F.D.I.C.,* 465 F.Supp. 305, 312–13 (M.D.Tenn.1978).

In the case at bar, an accord and satisfaction of the Bank's claim against the debtors had been reached prior to the FDIC's acquisition of any assets. In *E.F. Hutton & Co. v. Heim,* 236 Kan. 603, 610–11, 694 P.2d 445 (1985), the Kansas Supreme Court set out the requisites for establishing an accord and satisfaction as follows:

To constitute an accord and satisfaction, there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation. *Lippert v. Angle,* 215 Kan. 626, 630, 527 P.2d 1016 (1974). An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a meeting of the minds and accompanied by sufficient consideration. *Barnes v. Mid-Continent Casualty Co.,* 192 Kan. 401, 388 P.2d 642 (1964).

In this case, the Bank authorized its attorneys to settle the case by having the defendants submit quitclaim deeds. (Def. Ex. A; Aff. of Elmo Lund.) The Bank, through its attorney, notified the defendants that if they would submit the quitclaim deeds, the Bank would release them from all further liability. The defendants then signed the quitclaim deeds and submitted them to plaintiff's attorney. (Aff. of Elmo Lund.) This was accomplished prior to the date the Bank was closed by the Comptroller of Currency. (Aff. of Elmo Lund.) However, the deeds were not yet in the Bank's possession, and a formal "release of liability" had not been signed by the Bank prior to its closure. (Def. Ex. E.)

In *Thompson v. Meyers,* 211 Kan. 26, 32, 505 P.2d 680 (1973), the court stated:

"An accord is a contract between creditor and debtor for the settlement of the claim by some performance other than that which is due. Satisfaction takes

place when the accord is performed." (Quoting *Lighthouse for the Blind v. Miller*, 149 Kan. 165, Syl. ¶ 1, 86 P.2d 508).

■ Clearly, an accord had been reached between the parties herein. An attorney who has received his client's authorization to settle is empowered to reach an enforceable settlement agreement under Kansas law. *See Reimer v. Davis*, 224 Kan. 225, 580 P.2d 81 (1978). Thus, the parties—through their attorneys—had reached an accord that the defendants' liability on the note would be released in exchange for the quitclaim deeds.

The satisfaction took place once this accord was performed by the delivery of the deeds. As between the Bank and the obligors, the case was considered settled despite the remaining formality of the signing of a "release of liability." The Bank's attorney, acting as its agent, had received the quitclaim deeds. Accordingly, the contemplated performance was completed and the case was settled. Therefore, the obligors' note with the Bank was cancelled and was not an asset which the FDIC acquired in its purchase.

In *Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises*, 642 F.2d 785 (5th Cir. 1981), the FDIC sought to recover the deficiency on a note after foreclosure. The defendants-obligors asserted they had reached a settlement, or accord and satisfaction, with the payee of the note by virtue of an agreement whereby the latter promised not to seek a deficiency. The defendants contended this was a valid defense to which 12 U.S.C. § 1823(e) had no application. The court disagreed, finding § 1823(e) did apply, allowing the FDIC to avoid this unwritten agreement. However, the court's decision rested on the following factor which distinguishes it from the case at bar:

> While Hamilton Mortgage and appellants [obligors] apparently did agree to a satisfaction of the indebtedness by deed in lieu of foreclosure, *appellants never consummated the settlement by deliver of the deed* to Hamilton Mortgage.

642 F.2d at 787 (emphasis added). The court further noted:

> [T]he defense of accord and satisfaction ... has no merit because under [state] law, the original cause of action under the note was never extinguished *since the accord was never executed.*

642 F.2d at 788 (emphasis added).

In this case, unlike *Hoover-Morris*, the defense of accord and satisfaction is indeed meritorious as the accord was executed by delivery of the deeds.

The plaintiff relies on *F.D.I.C. v. General Investments, Inc.*, 522 F.Supp. 1061 (E.D.Wisc.1981), as authority that settlement agreements must be in writing to be enforceable under § 1823(e). However, in the *General Investments* case, the court specifically found that no settlement agreement had been reached:

> [T]he court must reject defendants' argument that an offset was agreed upon.... In [his] deposition ... [defendants' agent] admitted no settlement agreement was ever actually finalized.

522 F.Supp. at 1066. Although the court went on to say that had the parties reached the agreement, it would nonetheless have been found invalid as it was not in writing or approved by the board of directors, this was merely dictum which this court is not bound to follow.

■ Finding no other cases directly on point, this court is convinced that § 1823(e) has no application to this case. The Bank and the defendants had reached an accord and satisfaction, a settlement of claims, prior to the Bank's closing. Therefore, when the FDIC purchased the Bank's assets, it could not have purchased defendants' note, as it had been previously extinguished. Section 1823(e) applies only to assets which the FDIC *has* acquired.

IT IS ACCORDINGLY ORDERED this 20 day of August, 1986, that defendants' motion to enforce the settlement is sustained. There being no issues remaining for trial, this case is dismissed.