**Richard McHOSE, Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.**

No. 88–2729.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1989.

Decided Aug. 17, 1989.

Rehearing Denied Sept. 20, 1989.

Motion to File Bill of Costs Out of Time Granted Oct. 11, 1989.

Delbert C. Binford, Des Moines, Iowa, for appellant.

E. Whitney Drake, Washington, D.C., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and BROWN *, Senior Circuit Judge.

JOHN R. BROWN, Circuit Judge.

Starting with all of the earmarks of an olympian stand-off between the supremacy of federal law as enhanced by the FDIC's Herculean power of 12 U.S.C. § 1823(e), and the Iowa law of accord and satisfaction, this case comes to an end as would any routine Iowa contract dispute.

### In the Beginning

This case is really quite pedestrian. On April 10, 1984, McHose borrowed $20,000, with interest from Osceola Bank and Trust Company. On the same day Clarence De-Boom borrowed $20,000, with interest from McHose. Subsequently, on April 23, 1987, the bank was closed as insolvent and FDIC was appointed receiver.

FDIC, after the assumption and purchase as receiver of the assets of the bank, brought suit against McHose for the balance due on the $20,000 promissory note. Acknowledging that otherwise the note was in default, McHose's defense was accord and satisfaction. The district court [1] granted summary judgment for FDIC.

### A New Promise For An Unfulfilled One?

Sometime in July 1986, both the McHose and DeBoom notes were past due, unpaid, and in default. The bank and McHose, both anxious to liquidate McHose's obligation, entered into negotiations, the nature of which remain unknown because of the limited nature of the submissions in support of and in opposition to summary judgment. Whatever the give-and-take of any such negotiations, the admissibility of any evidence thereof, or its significance in resolving matters in dispute, the parties did settle, or at least so they thought, their controversies by their Assignment and Loan Agreement of July 23, 1986.[2] By a writing, which would reflect great credit on the most sophisticated securities counsel, comprising 1½ pages of inducement, whereas clauses, and—in an almost equal amount of space—the definitive agreements, the bank and McHose made the following agreement:

1. The bank will limit its claim against McHose to the extent of McHose's interest in the security (DeBoom's note and McHose's real estate).

2. McHose will assign the DeBoom note to the bank.

3. The bank, at its own expense, will "proceed in a reasonable business-like fashion to collect the DeBoom Note."

4. The bank will not discount or compromise the amount of the DeBoom note except:

   (a) With "the prior written approval and consent of McHose; *or*"

   (b) By "crediting the McHose Note to the extent of any reduction in the amount of the DeBoom Note as a result of the compromise or discount."

5. The consequences of the bank's success or failure in obtaining satisfaction from the security are:

   (a) If the bank is successful "in collecting all monies due ... under the De-Boom Note and thereby receiving full payment of the McHose Note, the Bank will release the mortgage" on the real estate;

   (b) If the bank does not obtain "full payment of the DeBoom Note and thereby satisfy[ ] the McHose Note, [the] Bank may then proceed" to enforce its security interest in the real

---

* The Honorable John R. Brown, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Honorable Harold D. Vietor, Chief Judge, Southern District of Iowa.

2. *See* Appendix A.

estate for any unpaid balance on the McHose note.

(c) The bank will not proceed against the real estate until "it appears no further sums can reasonably be expected to be recovered from DeBoom."

6. The "Bank agrees to limit its right of recovery and remedies under the McHose Note to those amounts it recovers from DeBoom and the [real estate] security...."

7. "[U]pon exhaustion of the security ... *or* satisfaction of the McHose Note ... the McHose Note will be cancelled and returned to McHose and McHose shall have no further liability to Bank."

The upshot of the agreement was that if the total amount due (for principal and interest) on the McHose note was fully satisfied by (i) the DeBoom note *or* (ii) the mortgage real estate, then the McHose note would be cancelled. As a corollary, if the McHose note was not satisfied by the DeBoom note, the mortgaged real estate would stand for the McHose note liability.

### Iowa Accord and Satisfaction
### Tall and Green

On a record which consists primarily of uncontroverted affidavits about the existence of the McHose and DeBoom notes, the agreement between the bank and McHose, and the bank's actions in enforcing the DeBoom note, the parties got into a squabble about the Iowa law of accord and satisfaction. The trial judge—dragged or pulled into this unessential controversy—verbally expressed, without articulating his reasons, the conclusion that the agreement

was not an accord and satisfaction under Iowa law. Oddly enough, there does not seem to be any real dispute among the knowledgeable Iowa counsel before us on the unchallenged excerpts of substantative law from Iowa decisions.[3]

### It's Performance That Counts

Emphasizing the several conditional clauses, e.g., "whereas, if the bank is successful" and "if the bank is unsuccessful,"[4] the FDIC attempts to support the conclusion of the district court that it was not an Iowa accord and satisfaction. But we need not ponder this question of Iowa law or even contemplate the certification of such a profound problem to the Iowa Supreme Court because we conclude that even with the facts construed most favorably to McHose the bank has not received the "satisfaction" which McHose promised. Assuming—or for that matter even conceding—that the agreement is a valid, enforceable Iowa accord and satisfaction, it failed because of a simple lack of performance.

So far as McHose was concerned, the bank's satisfaction depended primarily on the recoveries from and on the DeBoom note. The record, however, is devoid of *any* intimation of *any* recovery by the bank from DeBoom on the DeBoom note. On the contrary, the record shows without dispute that, so far as the bank was concerned, it filed suit against DeBoom on the note but then proceeded voluntarily to dismiss the suit *with prejudice*. Granted that nominally this was "without the prior written approval and consent of McHose,"[5]

---

**3.** Accord and satisfaction is a means of discharging a contractual obligation by agreement of the parties to render and accept a different and substituted performance as full satisfaction of the preexisting claim.

*Electra Ad Sign Co., Inc. v. Cedar Rapids Truck Center, Inc.,* 316 N.W.2d 876, 879 (Iowa 1982) (citations omitted).

The pertinent, relevant, and material facts, and the intention and contentions of each party must be known and understood by the other, in order to make the settlement valid....

....

... "There can, therefore, be no accord and satisfaction unless the creditor, or party receiving the thing or promise offered, understands, or, from circumstances of the offer, or the acts or declarations with which it is accompanied, is bound to understand, that he takes it in full satisfaction of his claim."

*Holm v. Hansen,* 248 N.W.2d 503, 508 (Iowa 1976) (quoting *Kellogg v. Iowa State Trav. Men's Assn.,* 239 Iowa 196, 211, 29 N.W.2d 559, 567 (1947)).

**4.** *See* ¶ 5 of our synopsis of the Assignment and Loan Agreement *supra.*

**5.** Para. 3 of the Agreement (App. A).

both the initiation of the suit on the De-Boom note and the order of dismissal with prejudice were each at the hands of McHose's own counsel.[6]

But the absence of "prior written approval and consent of McHose" is not decisive since ¶ 3 of the Agreement, although prohibiting discount or compromise "without the prior written approval and consent of McHose," established an express alternative. The bank could give prior written notice to obtain consent by McHose *or*—and the or is significant—it could credit "the McHose Note to the extent of any reduction in the amount of the DeBoom Note as a result of the compromise or discount." Knowing firsthand that the suit on the DeBoom note had been dismissed with prejudice, it was up to McHose to demonstrate factually the amount of the credit, if any, due because of any compromise. On the record as it exists the amount received by the bank was $0. In the words of the Agreement, the bank was "unsuccessful in obtaining full payment of the DeBoom Note and thereby satisfying the McHose Note." The bank was, by the literal terms of the Agreement, therefore entitled to proceed against the real estate security.

### Save Muscle Flexing for Beaches

In justifying the summary judgment in its favor, FDIC urges, as it did in the district court, that the Herculean superpower afforded FDIC by § 1823(e) [7]—which according FDIC the status of more than a holder in due course,[8] to put the sometime awesome strong-arm capacity of a bankruptcy trustee, 11 U.S.C. § 544, in the shade—makes the Assignment and Loan Agreement unenforceable.[9]

Since we hold as a matter of contract principles that the Assignment and Loan Agreement has not been fully performed to satisfy the bank, we do not reach the question of § 1823(e) and its supremacy, nor need we consider *FDIC v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986) and the asserted application of *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), which McHose urgently stresses.

Although our reasoning differs from that expressed by the district court, its summary judgment was correct.

AFFIRMED.

On Motion to File Costs Out-of-Time

Appellee's motion to file bill of costs out-of-time is granted.

Appellee may recover from the appellant the sum of $36.71 for preparation of appellee's brief in this matter. The Clerk of the United States District Court is requested to insert this award in the previously issued mandate.

### APPENDIX A
### ASSIGNMENT AND LOAN AGREEMENT

WHEREAS, Osceola State Bank & Trust Company of Osceola, Iowa (Bank) is the

---

**6.** Delbert C. Binford is listed as counsel for McHose and signed all the memoranda and papers in opposition to FDIC's motion for summary judgment and for reconsideration. Binford also was counsel for the bank in its state court action against DeBoom, signing both the petition against DeBoom and the dismissal with prejudice.

The court neither casts nor intimates any aspersions on the ethical conduct of Mr. Binford who, while representing McHose before us on the argument, explained that his representation of the bank was a professional courtesy to his friend, the regular counsel for the bank. Nonetheless, McHose's own papers filed in the federal district court by Binford demonstrate without contradiction that the bank not only did dismiss the suit, but also was compromising the claim on the DeBoom note.

**7.** *See* 12 U.S.C. § 1823(e); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**8.** *See FDIC v. Fonseca*, 795 F.2d 1102, 1106 (1st Cir.1986); *Firstsouth F.A. v. Aqua Construction, Inc.*, 858 F.2d 441 (8th Cir.1988).

**9.** Section 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

payee and holder of Richard McHose's Promissory Note dated April 10, 1984 in the face amount of $20,000.00 bearing interest at the rate of fourteen percent (14%) per annum (the McHose Note) which is now past due; and

WHEREAS, Richard McHose (McHose) is the payee and holder of Clarence De-Boom's (DeBoom) Promissory Note dated April 10, 1984 in the face amount of $20,-000.00 bearing interest at the rate of fourteen percent (14%) per annum (the DeBoom Note) which is now past due and unpaid in the same amount as his note to the Bank; and

WHEREAS, the Bank desires McHose pledge his interest in certain real estate and to assign the DeBoom Note as security for collection of the McHose Note; and

WHEREAS, Bank has agreed to at its expense endeavor to collect the DeBoom Note from DeBoom at Bank's cost to the extent the costs cannot be recovered pursuant to the terms of the DeBoom Note; and

WHEREAS, the Bank is engaged in collecting other claims and debts from De-Boom; and

WHEREAS, Bank has agreed to apply all amounts recovered from DeBoom, whether for this Note or otherwise, against the DeBoom Note and thereby credit the McHose Note; and

WHEREAS, if the Bank is successful in collecting all monies due as principal and interest under the DeBoom Note and thereby receiving full payment of the McHose Note then Bank will release the mortgage on said real estate; and

WHEREAS, if the Bank is unsuccessful in obtaining full payment of the DeBoom Note and thereby satisfying the McHose Note, Bank may then proceed to recover on its security interest in real estate for any unpaid balance of principal and interest on the McHose Note; and

WHEREAS, Bank has agreed to limit its claim against McHose to the extent of McHose's interest in said security provided there have been no payments prior to date hereof on the DeBoom Note in excess of the payments on the McHose Note or prior assignment or negotiations of McHose's interest in the DeBoom Note.

NOW, THEREFORE, it is agreed between the Bank and McHose as follows:

1. By separate instrument McHose agrees to execute a separate instrument to assign all his right, title and interest in the DeBoom Note to Bank.

2. McHose waives his right under the U.C.C. Article 9 in order to authorize and empower Bank to proceed as assignee under the DeBoom Note in Bank's own name directly against DeBoom in order to apply any recovery against discharge and satisfaction of each Note.

3. Bank agrees to proceed in a reasonable business-like fashion to collect the De-Boom Note provided, however, Bank will not discount or compromise the amount of the claim against DeBoom without the prior written approval and consent of McHose or without crediting the McHose Note to the extent of any reduction in the amount of the DeBoom Note as a result of the compromise or discount.

4. As between the parties hereto Bank agrees to credit the McHose Note to the extent of any monies recovered on presently existing debts or claims from DeBoom after date hereof and in the event such credits result in full payment of all sums due and payable under said Note then any future sums or amounts recovered on the DeBoom Note shall belong to the Bank as its absolute property with no obligation to account to McHose.

5. Richard McHose agrees to execute a separate instrument to mortgage and pledge as security for the McHose Note his interest in the following described property:

Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section 21, Township 67 North Range 25 West of the 5th P.M.

6. Bank agrees not to proceed against McHose interest in said real estate until such time as it appears no further sums can reasonably be expected to be recovered from DeBoom.

7. Bank agrees upon exhaustion of the security for the McHose Note or satisfaction of the McHose Note as herein provided

the McHose Note will be cancelled and returned to McHose and McHose shall have no further liability to Bank.

8. Bank agrees to limit its right of recovery and remedies under the McHose Note to those amounts it recovers from DeBoom and the security herein pledged to secure the McHose Note.

9. Bank agrees to report for all credit reporting purposes that McHose has performed his obligations pursuant to the McHose Note in a due and timely manner provided that in the event foreclosure McHose agrees to voluntarily waive his right of redemption, if any, in the above-described property.

Dated this 23rd day of July, 1986.

OSCEOLA STATE BANK
& TRUST
COMPANY OF OSCEOLA,
IOWA
By /s/D.R. Wubbena
D.R. Wubbena    (Title)
/s/Richard McHose
Richard McHose